IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GREGORY L. DOWDY,

    Petitioner,

v.

BEN CURRY,

    Respondent.

No. C 09-03144 WHA

**ORDER RE PETITIONER'S RULE 60 MOTION FOR RELIEF**

## INTRODUCTION

In this habeas action by a state prisoner, petitioner moves to set aside final judgment under Rule 60(b). For the reasons stated below, petitioner's motion is **DENIED**.

## PROCEDURAL HISTORY

In July 1998, a jury in Contra Costa County Superior Court convicted petitioner of robbery and found that he had two prior felony convictions. Accordingly, the trial court sentenced petitioner to 32 years-to-life in state prison. The California Court of Appeal affirmed the judgment on September 30, 1999. Petitioner did not appeal his conviction to the California Supreme Court (Dkt. No 10).

Petitioner filed his first federal habeas petition *pro se* on October 9, 2008, alleging a plethora of constitutional violations. On December 5, 2008, the petition was denied for failure to exhaust as he did not present his claims to the California Supreme Court. *See Dowdy v. Curry*, No. 8-4684 (N.D. Cal. Dec. 5, 2008). Subsequently, petitioner filed a petition for writ of habeas corpus in the California Supreme Court, which was denied on June

10, 2009. On July 10, 2009, petitioner filed his second federal habeas petition *pro se*, which was denied as untimely on August 30, 2010. Petitioner's motion for a certificate of appealability was denied (Dkt. No. 14).

On April 2, 2012, our court of appeals granted a certificate of appealability with respect to whether petitioner is entitled to equitable tolling based on his alleged mental incompetence and appointed counsel (Dkt. No. 17). Petitioner's counsel filed a motion with our court of appeals for limited remand for purposes of supplementing the record before the district court, which was denied without prejudice to another motion accompanied by written indication from the undersigned judge that a Rule 60(b) motion would be entertained. The undersigned judge issued an order that so indicated (Dkt. No. 31). Afterwards, our court of appeals granted petitioner's motion to remand for the limited purpose of considering his Rule 60(b) motion (Dkt. No. 37). Petitioner then filed his Rule 60(b) motion herein, which included an report by petitioner's retained expert, Dr. James Missett. After the motion was fully briefed, petitioner's motion to further supplement the record with additional report by Dr. Missett was granted. Respondent was allowed to file a rebuttal expert report by Dr. David Schatz, the chief of psychiatry at petitioner's prison. Petitioner then filed a third report by Dr. Missett that responded to Dr. Schatz's conclusions. Petitioner also lodged a copy of his medical records, which the Court reviewed. This order notes that several dozen pages of petitioner's 922-page medical record contain illegible writing and thus were not given any weight.

On January 27, 2014, an evidentiary hearing was held with respect to petitioner's mental competency. Dr. Missett testified on behalf of petitioner, and Dr. Schatz testified on behalf of respondent. Afterwards, both sides filed supplemental briefing. This order now determines the findings of fact after that hearing and denies petitioner's Rule 60(b) motion based on those findings.

**FINDINGS OF FACT**

1. After his conviction in 1998, petitioner was sent to San Quentin State Prison, where he was placed in the prison's enhanced outpatient mental health

2

1  program ("EOP").  His Global Assessment of Functioning score ("GAF"), a numerical scale of 0 through 100 that rated a person's social, occupational, and psychological functioning, was a 52.  On May 28, 1999, petitioner was admitted to a mental health crisis bed because he was suicidal, psychotic, and had been beaten up.  On June 17, 1999, petitioner was diagnosed with "chronic psychosis," among other mental illnesses.  His mental illness may have been induced by his addiction to opioids and other substances.  He was proscribed Zyprexa, also known as olanzapine, an antipsychotic drug, and discharged to EOP (AGO 2–7, 9, 12, 16–18, 212, 225).  This order finds that petitioner was diagnosed as mentally ill in 1999.[*]

2. Petitioner's medical records indicate that between 1999 and 2001, he suffered from recurring psychotic symptoms, including depression, hallucinations, and paranoia (AGO 138–141, 159, 162).  After petitioner was referred to a doctor to review his medications, he was proscribed Effexor, an antidepressant, on April 19, 2001 (AGO 162–167).  A month later, petitioner reported that taking Zyprexa and Effexor reduced his depression and psychotic symptoms (AGO 168–69).  Aside from a few isolated instances when he reported auditory hallucinations, petitioner's medical records show that the medication effectively controlled his psychotic and depressive symptoms from May 2001 through 2008 (AGO 149, 152, 168–69, 171–72, 199, 207, 209–11, 215, 225–28, 234–38, 251–52, 255, 258–59, 268–75, 285, 289, 301, 307).  In fact, petitioner did not require another admission to a mental health crisis bed between 2001 and 2008.  Moreover, petitioner was consistently rated with a GAF score between 60 and 68 between 2000 through 2008 (AGO 141, 144, 154, 160, 172, 174–81, 190–98, 206, 215, 223, 230, 241, 243, 244, 248, 257, 259, 261, 267, 273, 276, 278, 286, 290, 294, 300, 306).

---

[*] The "AGO" citation refers to petitioner's mental health records lodged with the Court on May 7, 2013. The page numbers refer to the Bates-stamped numbers on the bottom right-hand side of the page.

3

3. Petitioner's own expert witness, Dr. Missett, testified at the evidentiary hearing that the average person on the street could be expected to have a GAF score "between 60 and 70" (RT at 101). Moreover, Dr. Missett testified that a GAF score of 60 only indicates "mild to moderate reactions to various things that they encounter in life" (*ibid.*). Petitioner's consistently average GAF scores square with his mental health treatment plan's annual assessment of his cognition as consistently within normal limits between 2002 and 2008 (AGO 179, 214, 222, 240, 258, 266, 299). Dr. Missett also testified that if petitioner was medicated for his mental illnesses, "[h]e would function . . . But [persons who are adequately treated for their mental illnesses] don't usually get to the top. They're pretty close though. And that could be enough . . . [to] exercise judgment over good parts of their lives . . . *they are going to function very well*" (RT at 98–99) (emphasis added).

4. Accordingly, this order finds that while petitioner was diagnosed as mentally ill in 1999, his mental condition was effectively controlled by taking Zyprexa, Effexor, and other medications from at least 2002 through 2008 and therefore was not mentally incompetent during those years.

5. Petitioner alternatively argues that he suffered from various side effects of the anti-psychotic medications that he was prescribed to control his mental illness. In particular, he argues that Zyprexa can cause "drowsiness as well as problems with vision, sleep and balance" (Dkt. No. 73, Br. at 3). Petitioner's own medical records indicate, however, that he consistently stated, and his medical doctors determined, that he was not suffering from any adverse side effects from his medications between 2001 through 2008 that rendered him mentally incompetent (AGO 167, 169, 199, 207, 209, 210, 211, 225, 228, 234, 236, 237, 238, 251, 252, 256, 269, 270, 272, 285, 287, 289, 293). Petitioner's argument that medical staff *may* not have consistently monitored him for adverse side effects is not supported by the record. Therefore, this order finds

4

|   |   |   |
|---|---|---|
| | | that petitioner's medication did not cause side effects severe enough to render him mentally incompetent. |
| | 6. | Petitioner also argues that his hepatitis C medication, Interferon, had the capacity to make him "very tired and very sick" (Dkt. No. 73, Br. at 3). Yet, after petitioner began his Interferon treatment in December 2006 and felt "sick" for the first several weeks, he reported that he was "handling [I]nterferon . . . o.k." and reported no adverse side effects afterwards (AGO 256, 259, 268). This order finds that Interferon did not cause side effects severe enough to render him mentally incompetent. |

## ANALYSIS

The AEDPA imposes a one-year statute of limitations on the filing of federal habeas petitions. 28 U.S.C. 2244(d). The limitations period commences on "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. 2244(d)(1)(A). Here, petitioner's state case became final on November 9, 1999, so his federal habeas petition became due on November 9, 2000.

Petitioner took no action until he filed his first federal habeas petition in 2008, which was dismissed for failure to exhaust. A petition that is so dismissed does not toll the AEDPA statute of limitations. *Duncan v. Walker*, 533 U.S. 167 (2001). Petitioner subsequently filed a state habeas petition with the California Supreme Court in December 2008, which was dismissed as untimely in June 2009, and that state petition did not revive or restart the statute of limitations clock. *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003). Accordingly, the instant federal habeas petition, which was filed on July 10, 2009, is almost nine years late. On September 2, 2010, the petition was dismissed as untimely and final judgment was entered in favor of respondent (Dkts. No. 10, 11). Petitioner moves to set aside final judgment in this action under Rule 60(b), claiming that he is entitled to equitable tolling due to mental incompetence.

5

### 1. EQUITABLE TOLLING DUE TO MENTAL INCOMPETENCE.

The AEDPA's statute of limitations period is subject to equitable tolling if the petitioner demonstrates: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Holland v. Florida*, 130 S.Ct. 2549, 2562 (2010). Petitioner bears the burden of alleging facts that would give rise to tolling. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

Although the Supreme Court has not yet addressed a claim of equitable tolling based on alleged mental incompetence, our court of appeals formulated a two-part test to determine whether a petitioner is entitled to equitable tolling based on mental incompetence:

> First, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control . . . by demonstrating the impairment was so severe that either:
>
> > (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
> >
> > (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.
>
> Second, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

*Bills v. Clark*, 628 F.3d 1092, 1099–1100 (9th Cir. 2010). "The petitioner . . . always remains accountable for diligence in pursuing his or her rights . . . [and] must diligently seek assistance and exploit whatever assistance is reasonably available." *Id.* at 1100–01.

### A. Severity of Petitioner's Mental Illness.

As found above, petitioner was diagnosed as mentally ill. Yet, the existence of mental illness alone is not enough to show incompetence. *See United States v. Leggett*, 162 F.3d 237, 244 (3d Cir. 1998), *cert. denied*, 528 U.S. 868 (1999); *Chioino v. Kernan*, 2006 U.S. Dist. LEXIS 74443, at *28 (N.D. Cal. Sept. 29, 2006) (Judge Marilyn Hall Patel) (collecting cases). Rather, petitioner must show that his mental illness was so severe that he was "unable rationally or factually to personally understand the need to timely file" or "unable personally to prepare a habeas petition and effectuate its filing." *Bills*, 628 F.3d at 1099–1100.

6

1    Here, petitioner's mental illness was managed and adequately treated with anti-
2 psychotic and antidepressant medications from at least 2002 to 2008.  As stated above,
3 petitioner's medical records overwhelmingly show that his cognition and overall
4 psychological functioning were equivalent to that of an "average person on the street," as his
5 own expert testified.  The American Psychiatric Association's Diagnostic and Statistical
6 Manual of Mental Disorders similarly states that GAF scores of 61–70, as petitioner
7 consistently scored from 2002 through 2008, indicate that the subject may have some mild
8 symptoms but is "generally functioning pretty well."  *Sigmon v. Kernan*, 2009 U.S. Dist.
9 LEXIS 125771, at *26–27 (C.D. Cal. Mar. 17, 2009) (Judge Jeffery Johnson) (citing
10 DSM-IV-TR (4th ed. 2000)); *Ramirez v. Gonzales*, 2008 U.S. Dist. LEXIS 115060, at *7–9
11 (C.D. Cal. Sept. 2, 2008) (Judge Rosalyn Chapman) (GAF scores of 60, 65, and 68 indicate
12 normal mental status).  Moreover, petitioner's medical records show that he did not suffer any
13 adverse side effects from any of his medications that might render him mentally incompetent.
14 Mental illnesses that are properly treated do not rise to the level of mental incompetence.  *See*
15 *Stofle v. Clay*, 2011 U.S. Dist. LEXIS 37228, at *12–16 (N.D. Cal. Mar. 31, 2011) (Judge
16 Saundra Brown Armstrong); *Fite v. Martel*, 2011 U.S. Dist. LEXIS 47644, at *19 n.10 (C.D.
17 Cal. Mar. 24, 2011) (Judge Jacqueline Chooljian).  Petitioner's own expert, Dr. Missett,
18 acknowledged that petitioner was not continuously psychotic from 1999 through 2009 (RT at
19 92).  Moreover, one of the few times petitioner reported hearing voices was on June 24, 2008
20 (AGO 287).  Yet, on October 9, 2008, petitioner was able to file his first habeas petition.
21 After petitioner's habeas petition was denied for failure to exhaust, he was able to understand
22 that he had to file a state habeas petition with the California Supreme Court in order to pursue
23 federal habeas relief, which he did on December 24, 2008 (Dkt. No. 10 at 2).

24    During 2009, petitioner's mental health allegedly worsened.  He requested urgent
25 psychiatric care, suffered from insomnia, and heard disturbing voices (AGO 312–14, 318).
26 Despite the sudden collapse of his mental state after his first federal habeas petition was
27 denied, however, petitioner was somehow able to file his second federal habeas petition in
28 2009 after the California Supreme Court denied his state habeas petition as untimely.  In the

7

second federal habeas petition, which he filed with the assistance of a "prison paralegal," petitioner was able to explain that he satisfied AEDPA's exhaustion rules (Dkt. No. 1 at 1). He was able to do so despite the fact that his mental stability in 2009 was significantly worse than in the preceding seven years, when he reported (and medical experts determined) his mental health to be at least normal, if not good. When the record shows that a petitioner's mental functions are "good" or "within normal limits," he is not entitled to equitable tolling. *Roberts v. Marshall*, 627 F.3d 768, 772 (9th Cir. 2010). Accordingly, petitioner is not entitled to equitable tolling from at least 2002 through 2008 because his properly-treated mental illness during that time did not render him mentally incompetent. Because petitioner has failed to toll at least seven of the nine years of his tardy petition, this order does not need to reach whether he is entitled to equitable tolling from 1999 through 2001 or for 2009.

### B. Petitioner Must Toll Every Day His Petition Is Tardy.

The parties agree that petitioner's state action became final under the AEDPA on November 9, 1999. The parties also agree that the one-year statute of limitations of AEDPA applies, such that petitioner's federal habeas petition was due on November 9, 2000, unless the statute of limitations was tolled. *See* 28 U.S.C. 2244(d). Moreover, petitioner's instant federal habeas petition was deemed filed on June 30, 2009 (Dkt. No. 10 at 2). Our court of appeals has held that petitioners who file tardy habeas petitions after the AEDPA statute of limitations lapses must account for every intervening day. *Chaffer v. Prosper*, 592 F.3d 1046, 1049 (9th Cir. 2010). Accordingly, petitioner is burdened to toll exactly eight years, seven months, and 21 days.

Petitioner argues, however, that he is not obligated to toll the entire time; he "must only show that his mental illness prevents him from meeting the [AEDPA statute of limitations] deadline and that he was otherwise diligent in pursuing his rights" (Dkt. No. 49, Reply Br. at 2). In other words, petitioner argues that he only needs to toll the time between November 9, 1999, which is when his state action became final under the AEDPA, and November 9, 2000, which is when the AEDPA's statute of limitations period expired, and show that he diligently pursued federal habeas relief for the following nine years. In support

8

1    of this theory, petitioner cites an unpublished Ninth Circuit decision that held that a petitioner
2    who was intentionally deceived by her attorney into falsely believing that he was pursuing an
3    appeal on her behalf is entitled to three years of equitable tolling. *Jones v. Henry*, 460 Fed.
4    Appx. 717, 719 (9th Cir. 2011).

*Jones*, however, is clearly distinguishable from the instant action. In *Jones*, the petitioner's attorney intentionally and continually deceived the petitioner about her appeal for three years. *Id.* at 720. Thus, she was subject to "extraordinary circumstances" outside of her control that entitled her to three years worth of equitable tolling. In contrast, our petitioner's medical records show that he was mentally stable and cognitively within normal limits for over seven years. Thus, even assuming that petitioner is entitled to equitable tolling from November 9, 1999, to November 9, 2000, he was able to successfully control his mental illness at the end of 2001, and therefore was no longer subject to "extraordinary circumstances" outside of his control. *Holland*, 130 S.Ct. at 2562. Thus, petitioner must toll every day that his petition was late. He has failed to do so.

### C.    Diligence.

Assuming, *arguendo*, that petitioner is entitled to toll November 9, 1999, to November 9, 2000, he has still failed to show that he diligently pursued federal habeas relief afterwards. "The petitioner . . . always remains accountable for diligence in pursuing his or her rights . . . [and] must diligently seek assistance and exploit whatever assistance is reasonably available." *Bills*, 628 F.3d at 1099–1100. A petitioner is not entitled to equitable tolling, even if mentally incompetent, if he or she fails to diligently seek assistance to pursue federal habeas relief. *Stancle v. Clay*, 692 F.3d 948, 959 (9th Cir. 2012).

Here, petitioner was able to file two separate habeas petitions with the alleged assistance of a "prison paralegal" before he filed the instant habeas petition. In 2005, he filed a habeas petition in state court, alleging the same claims that he alleges now (Opp., Exh. A). In 2008, petitioner filed his first federal habeas petition, alleging the same claims that he alleges now. He has failed to adequately explain why he did not utilize a jailhouse lawyer to file a state or federal habeas petition before 2005. To explain why he did not file a federal

9

habeas petition between 2005 and 2008, petitioner states in his second habeas petition that he had "continuing mental issues" (Dkt. No. 1 at 5). Yet, his own medical records indicate that his mental health was within normal limits during 2006 and 2007. These gaps in time indicate that petitioner's mental impairment, if any, was not the "but-for cause" of the delay. *Bills*, 628 F.3d at 1100. Thus, even if he has proven mental incompetence, petitioner has not satisfied his burden to prove that he has diligently pursued his rights. *See Biagas v. Walker*, 2013 U.S. Dist. LEXIS 14180, at *17–18 (N.D. Cal. Jan. 30, 2013) (Judge Saundra Brown Armstrong); *Brown v. Brazelton*, 2013 U.S. Dist. LEXIS 147860, at *22–24 (C.D. Cal. June 14, 2013) (Judge Jean Rosenbluth); *Ward v. Exec. Dir.*, 2013 U.S. Dist. LEXIS 108720, at *19–20 (E.D. Cal. Aug. 1, 2013) (Judge Michael Seng); *Thompson v. Virga*, 2012 U.S. Dist. LEXIS 74766, at *20–21 (S.D. Cal. May 29, 2012) (Judge Nita Stormes).

**CONCLUSION**

Petitioner did not prove, and the record does not support, that he is entitled to equitable tolling. The Court finds that petitioner was diagnosed as mentally ill in 1999, but his mental illness was effectively controlled from at least 2002 through 2008 with medication and treatment. The Court also finds that petitioner did not suffer any adverse side effects of the medication that rendered him mentally incompetent. Finally, petitioner was not diligent in pursuing federal habeas relief for at least seven years after the AEDPA statute of limitations lapsed. Accordingly, petitioner's motion to set aside final judgment under Rule 60(b) is **DENIED**.

**IT IS SO ORDERED.**

Dated: February 26, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE